In re William E. BUTLER, Debtor.

**GREEN STREET LIMITED PARTNERSHIP, Plaintiff,**

v.

**William E. BUTLER and James J. O'Connell, Standing Trustee, Defendants.**

**William E. BUTLER, Plaintiff,**

v.

**Thomas F. WHITE, Defendant.**

Bankruptcy No. 81–01622G.
Adv. Nos. 81–0728G, 81–0691G.

United States Bankruptcy Court,
E. D. Pennsylvania.

July 1, 1982.

Vito F. Canuso, Philadelphia, Pa., for defendant, Thomas F. White.

David S. Foulke, Spring House, Pa., for plaintiff, Green Street Limited Partnership.

Larry A. Colston and Sheldon Goodstadt, Philadelphia, Pa., for debtor/defendant, William E. Butler.

James J. O'Connell, Philadelphia, Pa., standing trustee.

Richard Max Bockol, Philadelphia, Pa., for third parties, Patricia Horwitz, Harry Horihan and Dennis Mitchell.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge:

The issue before the court is whether a binding agreement to settle litigation involving an alleged breach of a contract of sale of real property was entered into by counsel for the parties. We conclude, from the facts presented, that no such agreement was reached between the counsel for the parties.[1]

The facts of the instant case are as follows:[2] On June 5, 1979, William E. Butler ("Butler") entered into an agreement of sale with Thomas F. White ("White") for the sale of the real property located at 1806–14 Green Street, Philadelphia, Pennsylvania ("the Green Street property"). When that sale was not consummated, White instituted a suit against Butler in the state courts to compel specific performance of that agreement of sale. Thereafter, negotiations were held between counsel for Butler and White in an attempt to settle that litigation.

Subsequently, on April 30, 1981, Butler filed a petition for an adjustment of his debts under chapter 13 of the Bankruptcy Code ("the Code"). On June 23, 1981, Butler filed the instant adversary proceeding against White asserting that an agreement had been reached between the parties to settle the state court litigation for $25,-000.00 and requesting the court to subordinate White's claim in that amount pursuant to § 510(c) of the Code.[3] White answered that complaint by denying that any agreement had been reached by the parties.

In the interim, the Green Street Limited Partnership, the assignee of a mortgage on the Green Street Property, filed a complaint against Butler seeking relief from the automatic stay to permit it to foreclose its mortgage on that property.[4] The parties to the automatic stay litigation agreed to continue that adversary proceeding pending a decision on the complaint of Butler against White. In particular, Butler agreed that, if he lost in his action against White, the Green Street Limited Partnership would be entitled to an order granting it relief from the stay.[5]

From the evidence presented herein, we conclude that it is insufficient to sustain Butler's assertion that an agreement was reached between him and White. To support his contention, Butler offered the testimony of his attorney, Sheldon A. Goodstadt.

---

1. Two other issues raised by the parties herein were: (1) whether counsel for the defendant, White, had been authorized by White to enter into an agreement settling the litigation and (2) whether, if White's counsel had such authority and if such an agreement had been reached, the claim of White arising from that agreement is an unsecured claim which should be subordinated to other creditors under § 510(c) of the Bankruptcy Code. Because we conclude that no agreement was reached, we find it unnecessary to reach the other issues presented.

2. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

3. Section 510(c) of the Code provides in part:
   (c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest.
11 U.S.C. § 510(c)(1).

4. See, Green Street Limited Partnership v. William E. Green and James J. O'Connell, Standing Trustee, Adv. No. 81–0728 (filed June 29, 1981).

5. See N.T. at 9–10 (Adv. No. 81–0728G, July 27, 1981) and N.T. at 2–3 (Adv. No. 81–0691G, August 24, 1981). If Butler won his complaint against White, he asserted that he would be able to sell the Green Street property to certain third parties (see note 6 infra) and pay off the mortgage debt owed to the Green Street Limited Partnership.

Goodstadt testified that he had been involved in the negotiations for the settlement of the state court negotiations with White's attorney, Vito F. Canuso. Goodstadt stated that on April 27, 1981, he contacted Canuso and asked him to contact White and determine what White would take to settle the outstanding state court litigation. Goodstadt testified further that Canuso later called him back (on April 30, 1981) and stated that White would settle that litigation for $25,000.00 and that, after Goodstadt had spoken with Butler, Goodstadt told Canuso that that figure was acceptable. Goodstadt thereafter sent a letter on May 11, 1981, enclosing a form of a settlement agreement to Canuso with the terms they had discussed.[6]

In addition to Goodstadt's testimony, Butler offered the deposition of Richard Max Bockol, the attorney for certain third parties[7] who had been negotiating with Butler to purchase the Green Street property at the same time that Butler and White allegedly entered into an agreement to settle their state court litigation. Bockol stated that, some time between April 21 and 28, 1981, he met with Goodstadt who stated that a settlement agreement had been reached between Butler and White. Bockol stated that, in order to confirm that information, he contacted Canuso on that day and was told that an agreement had been reached containing the terms that Goodstadt had specified. Bockol stated that, based on those conversations, he had an agreement prepared for the purchase of the Green Street property by his clients. That agreement contained a sales price which was calculated to include the $25,000.00 settlement figure between Butler and White and was signed by Butler and Bockol's clients on April 28, 1981.

In rebuttal, White offered his own testimony and the testimony of his attorney,

Canuso. White testified that, although he had discussed the possibility of a settlement with Canuso, he had never authorized Canuso to enter into any settlement of the state court litigation on his behalf. Canuso testified that on April 28, 1981, Goodstadt called him and made an offer on behalf of Butler to settle the litigation for $25,000.00.[8] Canuso stated that he told Goodstadt at that time that he would discuss that offer with his client. Canuso also stated that he did receive a call from Bockol inquiring about a settlement between Butler and White but that that call occurred *after* April 28, 1981, and that he told Bockol that he had only received an offer from Goodstadt. Canuso testified further that Bockol told him at that time that an agreement had already been reached between Butler and Bockol's clients. Canuso stated further that, when he received the proposed settlement agreement from Goodstadt, it contained terms different from those that had been discussed by him and Goodstadt on the phone. However, he stated that he sent the document to his client, White, who subsequently rejected it.

If the only evidence before the Court was the contradictory testimony given by the parties and their attorneys, our decision would be extremely difficult. However, there are several factors, in addition to the testimony of White and Canuso, which lead us to conclude that White's assertion that no settlement agreement was reached is correct. First, the letter sent by Goodstadt to Canuso enclosing the alleged settlement agreement supports Canuso's testimony rather than Goodstadt's testimony as to whether an agreement had been reached.[9] In particular, that letter states that enclosed is "an original and two copies of the *proposed* Settlement Agreement"[10] That letter concludes "Kindly review the *proposed* Settlement Agreement and if accept-

---

6. *See* Exhibits P–1 and D–2.

7. Those third parties were Patricia Horwitz, Harry Horihan and Dennis Mitchell.

8. In support of his testimony, Canuso produced the note which he had made at the time of the phone conversation with Goodstadt which stat-

ed "4–28–81 Goodstadt Offer to Settle for $25,-000." *See* Exhibit D–1.

9. *See* Exhibit P–1.

10. *Id.* at ¶ 1.

able as drawn, kindly have your client execute same and return the original and one copy to me for execution by my client." [11] We conclude that the language used by Goodstadt in that letter provides support for White's contention that no agreement had been reached between the parties at that time.

Second, we find that the fact that an agreement was reached between Butler and Bockol's clients does not lead us to conclude that an agreement had previously been concluded between Butler and White. Not only did Canuso testify that he told Bockol that no such agreement had been reached, but Goodstadt testified that no agreement had been reached between Butler and White until April 30, 1981, which was two days after Butler and Bockol's clients had executed their agreement of sale. Therefore, Bockol's testimony that he had been told, before April 28, 1981, that an agreement had been reached between Butler and White and that, based on that information, he advised his clients to sign the sales agreement on April 28, 1981, was contradicted by both Canuso and Goodstadt and is, therefore, not credible evidence that Butler and White had entered into a settlement agreement as of that date.

Based on all of the above evidence, we conclude that no settlement agreement had been reached between Butler and White to settle their state court litigation and that, consequently, the relief requested by Butler in the instant adversary proceeding should be denied. Furthermore, in light of the parties' agreement, we will also enter an order in the adversary proceeding brought by the Green Street Limited Partnership against Butler granting relief from the stay.[12]

---

11. *Id.* at ¶ 4.

12. *See* notes 4 and 5 and accompanying text *supra.*